## BOOTH *v.* STATE OF INDIANA.

[No. 22,224.  Filed January 28, 1913.  Rehearing denied April
15, 1913.]

1. CONSTITUTIONAL LAW.—*Subjects and Titles of Statutes.—Regulation of Coal Mines.—"Operator."—"Superintendent."*—The use
of the word "operators" in the title of the act of March 8, 1907
(Acts 1907 p. 193, §§8623, 8624 Burns 1908), requiring owners or
operators of coal mines and other employers of labor to erect and
maintain washhouses, etc., renders the title broad enough to cover
the provision including the superintendent of a coal mine, so that
the act is not in conflict with the provision of Art. 4, §19, of the
Constitution, requiring the subject of every act to be expressed in
the title.  pp. 408, 410.

2. STATUTES.—*Construction.*—The words of a statute will be construed in their plain, ordinary and usual sense, unless such construction will defeat the manifest intent of the legislature.  p.
409.

3. STATUTES.—*Construction of Penal Statutes.*—While a penal
statute should be strictly construed, the construction should be
reasonable and in accord with common sense, so as not to defeat the obvious intention of the legislature.  p. 409.

4. CONSTITUTIONAL LAW.—*Equal Protection of the Law.—Police
Power.—Regulation of Coal Mines.*—The act of March 8, 1907
(Acts 1907 p. 193, §§8623, 8624 Burns 1908), requiring the owners
or operators of coal mines and other employers of labor to erect
and maintain washhouses, etc., is not in conflict with the 14th
amendment of the Constitution of the United States, since it is
a proper exercise of the police power and does not deny to coal
companies the equal protection of the law.  p. 410.

5. CONSTITUTIONAL LAW.—*Police Power.—Regulation of Business.*
—The 14th amendment of the Constitution of the United States
neither impairs the police power of the state, nor prohibits the
regulation of one class of business by special provisions.  p. 410.

6. MINES AND MINERALS.—*Regulation of Coal Mines.—Statutes.—
Definiteness.*—The act of March 8, 1907 (Acts 1907 p. 193, §§8623,
8624 Burns 1908), requiring the owners or operators of coal mines
to erect and maintain washhouses, and providing a penalty, is
sufficiently definite in its terms and requirements.  p. 411.

7. MINES AND MINERALS.—*Regulation of Coal Mines.—Prosecution
for Failure to Maintain Washhouse.—Affidavit.—Sufficiency.—
"Provide".*—In a prosecution for violation of the act of March 8,
1907 (Acts 1907 p. 193, §8623 Burns 1908), requiring the owners
or operators of coal mines to erect and maintain washhouses,

the affidavit was not fatally defective in charging that defendant failed and refused to "provide" a suitable washroom, since the word "provide" means to make, procure, or furnish for future use, prepare. p. 411.

8. CONSTITUTIONAL LAW.—*Taking Property Without Compensation.* —*Regulation of Coal Mines.*—The act of March 8, 1907 (Acts 1907 p. 193, §§8623, 8624 Burns 1908), requiring the owners or operators of coal mines to erect and maintain washhouses, being a proper exercise of the police power, is not open to the objection that it contravenes the 14th amendment to the Constitution of the United States in that it deprives the owner or operator of property without compensation. p. 411.

9. CONSTITUTIONAL LAW.—*Judicial Functions.*—*Construction of Statutes.*—The legislature alone may determine, inside the limits fixed by the Constitution, when public safety or welfare requires the exercise of the police power, and the courts can only interfere when a statute conflicts with the Constitution, and have nothing to do with the wisdom, policy or necessity of the enactment. p. 411.

10. CONSTITUTIONAL LAW.—*Statutes.*—*Exercise of Statute.*—*Regulation of Coal Mines.*—The act of March 8, 1907 (Acts 1907 p. 193, §§8623, 8624 Burns 1908), requiring the owners or operators of coal mines to erect and maintain washhouses, on the petition of the employes, does not violate Art. 1, §25, of the Constitution, prohibiting the passing of laws to take effect upon any other authority than that provided in the Constitution. p. 412.

11. CRIMINAL LAW.—*Appeal.*—*Review.*—*Questions Considered.*—In a prosecution for failure to provide a washhouse, on the petition of the employes of a coal mine, as required by §§8623, 8624 Burns 1908, Acts 1907 p. 193 appellant's contention that the statute is uncertain in that it makes no provision as to when the act must be complied with, will not be considered on appeal, where it appears that more than a year had elapsed since he was petitioned to provide the washhouse and that he made no effort to comply with the law. p. 413.

12. CRIMINAL LAW.—*Statutes.*—*Definiteness.*—The true test of a criminal law as to its effect, is that it shall state the crime with such certainty that the person upon whom it operates, may, with reasonable certainty, ascertain what the statute requires to be done. p. 413.

From Sullivan Circuit Court; *Wm. H. Bridwell,* Judge.

Prosecution by the State of Indiana against Harry C. Booth. From a judgment of conviction, the defendant appeals. *Affirmed.*

*John T. & Will H. Hays* and *McNutt, Wallace & Sanders,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough,* for the State.

ERWIN, J.—This was a prosecution by the State of Indiana against Harry C. Booth, upon an affidavit charging that appellant was a superintendent of a coal mine in the county of Sullivan, and that after written demand of more than twenty employes of said mine, had failed to provide a washroom for the employes of said mine, in violation of an act of the General Assembly, approved March 8, 1907. Acts 1907 p. 193, §8623 Burns 1908.

The affidavit in said cause, omitting the caption, reads as follows: "Harry Ritchie being duly sworn, says on his oath: That on the 7th day of March, A. D., 1911, at and in the county of Sullivan and State of Indiana, Harry C. Booth did then and there unlawfully being then and there and from the said day continuously up to the time of the filing of this affidavit and being now superintendent of mine No. 25 in Sullivan County, Indiana, belonging to the Consolidated Indiana Coal Company, that at the time and place named, mine No. 25, belonging to the Consolidated Indiana Coal Company, was a coal mine then and there situated in which persons were then and continuously since have been and now are employed, and that said Harry C. Booth was then and there superintendent and in charge of said mine; that twenty of the employes of said mine then and there in writing requested the said Harry C. Booth, while superintendent and in charge of said mine to provide a washroom or washhouse for the use of persons employed in said mine; that said request was made to Harry C. Booth and directed to him under and in the name of H. C. Booth, as such superintendent, but that this defendant, Harry C. Booth and H. C. Booth is one and the same person; that said Harry C. Booth being superintendent and in charge of said mine, as aforesaid, and having been requested, as aforesaid, did then

and there unlawfully fail and refuse to provide a suitable washroom or washhouse or any washroom or washhouse whatever for the use of persons employed in said mine, and that ever since said day up to the present time, he has unlawfully refused, neglected and wholly failed to provide any washroom or washhouse for the use of persons employed in said mine, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Indiana.''

Appellant in due time moved to quash the affidavit. His motion was in substance that the law under which the prosecution was brought contravenes §19, article 4 of the Constitution of the State of Indiana, and is in violation of the 14th amendment to the Constitution of the United States, also is violative of §1, article 1, and §21, article 1, also, §23, article 1, also, §25, article 1, and §26, article 1 of the Constitution of the State of Indiana. The motion to quash the affidavit was overruled by the court, to which ruling of the court appellant excepted. Appellant entered a plea of not guilty and the cause was submitted to the court for trial without the intervention of a jury, which said trial resulted in finding of appellant guilty as charged in the affidavit. A motion in arrest of judgment was seasonably made, which motion was overruled by the court, and judgment entered, fixing the penalty at a fine of one dollar and costs of the prosecution, from which judgment appellant appeals to this court.

The assignment of errors in this court questions the constitutionalty of the act under which the prosecution was brought. The contention of appellant is, that the

1. title of the act limits the liability to *owners* and *operators* of coal mines and does not include superintendents. The affidavit avers that appellant is the *superintendent* of a coal mine. Section 19, article 4 of the Constitution of this State provides, ''Every act shall embrace but one subject and matters properly connected therewith, which

subject shall be expressed in the title.   But if any subject
shall be embraced in an act which shall not be expressed in
the title, such act shall be void only as to so much thereof
as shall not be expressed in the title.''   The title of the act
in question reads as follows: ''An Act requiring the own-
ers or operators of coal mines and other employers of labor
to erect and maintain washhouses at certain places where
laborers are employed, for the protection of the health of
the employes, and providing a penalty for its violation''.
The question is whether the title of the act is broad enough
to include superintendents.   Words and phrases shall be
taken in their plain, or ordinary and usual sense.   §240
Burns 1908, subd. 1, §240 R. S. 1881.   The Standard Dic-
tionary defines ''operate'' ''To put in action and *supervise*
the working of; to conduct or manage the affairs of; *super-
intend;* as to operate a mining business or a railroad.''
''Superintend'' is defined by the same authority: ''To
have the charge and direction of; especially of some work
or movement; regulate the conduct and progress of; be re-
sponsible for; manage; *supervise.*''   The words of a

2.   statute will be construed in their plain, ordinary and
usual sense, unless such construction will defeat the
manifest intent of the legislature.   *While* v. *Furgeson*
(1902), 29 Ind. App. 144, 154, 64 N. E. 49; *Coffinberry* v.
*Madden* (1903), 30 Ind. App. 360, 363, 66 N. E. 64, 96 Am.
St. 349.

It is contended by appellant that the act in question, be-
ing a criminal statute should be strictly construed.   This
contention is true to a limited extent.   In 2 Lewis'

3.   Sutherland, Stat. Constr. 962, the author uses the fol-
lowing language: ''The rule that penal laws are to
be construed strictly is perhaps not much less old than con-
struction itself.   It is founded on the tenderness of the law
for the rights of individuals; and on the plain principle
that the power of punishment is vested in the legislature.   It
is the legislature, not the court, which is to define a crime

and ordain its punishment. It is said that notwithstanding this rule, the intention of the law-maker must govern in the construction of penal, as well as other statutes. This is true. But this is not a new independent rule which subverts the old. It is the modification of the ancient maxim, and amounts to this: that though penal laws are to be construed strictly, they are not to be so strictly construed as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words * * * in their ordinary acceptation, or in that sense in which the legislature had obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ.'' The same author on page 981 has this to say further on the same subject: ''A penal statute should receive a reasonable and common sense construction, and its force should not be frittered away by niceties and refinements at war with the practical administration of justice.'' To the same effect, see, *State* v. *Louisville, etc., R. Co.* (1912), 177 Ind. 553, 96 N. E. 340, and cases cited.

1. The legislature while not using the word *superintendent* evidently intended in the title of the act that it should apply to those having the supervision—the conduct or management, or the charge and direction of, and who should be responsible for, and regulate the conduct and progress of the work of employes. We are of the opinion that the title of the act is comprehensive enough to include superintendents of mines.

Appellant presents the further question that the act in question is in contravention of the 14th amendment of the Constitution of the United States, in, that the act denies to coal companies the equal protection of the law, and discriminates between coal mining and other classes of business; that it discriminates between the different classes of persons engaged in coal mining; deprives the defendant of his property without due process of law. The 14th amendment does not impair

the police power of the state, nor does it prohibit one class of business being regulated by special provisions. *State* v. *Richcreek* (1906), 167 Ind. 217, 224, 228, 77 N. E. 1085, 119 Am. St. 491, 10 Ann. Cas. 899, and cases cited; *Barbier* v. *Connolly* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; *Soon Hing* v. *Crowley* (1885), 113 U. S. 703, 709, 5 Sup. Ct. 730, 28 L. Ed. 1145.

6. It is further insisted that the act in question is too indefinite and uncertain in its terms. It certainly can not be said that this act is indefinite as to its terms and requirements. It could not be made more certain without setting out plans and specifications for each building required at each mine.

Appellant contends that as the affidavit charges that he failed and refused to *provide* a suitable washroom that he can not be amenable under the statute. The word

7. "provide" means, to make, procure or furnish for future use, prepare. Standard Dictionary. *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, 148, 149, 63 N.

8. E. 31. Appellant raises the further question that the act in requiring the defendant to furnish the washhouse, deprives the owner or operator of property without compensation and in that respect contravenes the 14th amendment to the Constitution of the United States. A law which protects the lives, health, safety and comfort of employees is within the police power of the state. *Pittsburgh, etc., R. Co.* v. *Brown* (1879), 67 Ind. 45, 47, 48, 33 Am. Rep. 73; *State* v. *Richcreek, supra; State* v. *Barrett* (1909), 172 Ind. 169, 179, 87 N. E. 7; *Inland Steel Co.* v. *Yedinak* (1909), 172 Ind. 423, 433, 87 N. E. 229, 139 Am. St. 389, and cases cited; *Barrett* v. *State* (1911), 175 Ind. 112, 93 N. E. 543.

9. It rests solely with the legislative discretion, inside the limits fixed by the Constitution, to determine when public safety or welfare requires the exercise of the police power. Courts are authorized to interfere

and declare a statute unconstitutional only when it conflicts with the Constitution; with the wisdom, policy or necessity of such an enactment, they have nothing to do.  18 Am. and Eng. Ency. Law 746; *Walker* v. *Jameson* (1895), 140 Ind. 591, 597, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 49 Am. St. 222.

Appellant insists that the act is invalid for the reason that it is for the benefit of individuals employed in a particular mine, and that its operation is left entirely 10. to the dictation of certain persons.  That a certain law may be called into exercise by petition does not violate §25 article 1, of the Constitution.  *State* v. *Gerhardt* (1896), 145 Ind. 439, 470, 472, 44 N. E. 469, 33 L. R. A. 313; *Isenhour* v. *State* (1901), 157 Ind. 517-521, 523, 62 N. E. 40, 87 Am. St. 228; *Bowlin* v. *Cochran* (1903), 161 Ind. 486, 488, 489, 69 N. E. 153; *McPherson* v. *State* (1910), 174 Ind. 60, 70, 76, 90 N. E. 610, 31 L. R. A. (N. S.) 188, and cases cited.  This act is not open to the infirmities suggested by appellant in that it only applies to coal mines and not other classes of business.  This same question was raised in the case of *Soon Hing* v. *Crowley, supra,* and decided adversely to the contention of appellant.  Justice Fields uses the following language in the later case: "The specific regulation of one kind of business, which may be necessary for the protection of the public can never be the just grounds of complaint, because like restrictions are not imposed upon other business of a different kind."  The same doctrine was declared in *Barbier* v. *Connolly, supra.*  It will not be doing violence to any of the authorities cited by the learned counsel for the appellant, to say that the question of whether the act is reasonable, is one for the legislature, provided it shall operate alike on all persons of a particular class.  To the same effect, see, *Townsend* v. *State* (1897), 147 Ind. 624, 633, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477; *Parks* v. *State* (1902), 159 Ind. 211, 222, 223, 64 N. E. 862, 59 L. R. A. 190; *State* v. *Richcreek, supra; State* v. *Barrett, supra;*

*State, ex rel.,* v. *McClelland* (1894), 138 Ind. 395, 398, 37 N. E. 799; *State, ex rel.,* v. *Kolsem* (1892), 130 Ind. 434, 443, 29 N. E. 595, 14 L. R. A. 566; Gillett, Crim. Law §2.

If appellant had made an honest effort to comply with the law and had proceeded within a reasonable time, after being petitioned as alleged in the affidavit to erect the washhouse, he might, with good grace present the argument, that the statute makes no provision as to when he must comply with the act. The affidavit alleges that he was petitioned on March 7, 1911, and that he had failed to comply with the request for more than a year, or until March 11, 1912. *Chicago, etc., R. Co.* v. *City of Crawfordsville* (1905), 164 Ind. 70, 74, 72 N. E. 1025; *State* v. *Louisville, etc., R. Co., supra.* The provision of the law is a salutary one and is no more unreasonable than the provision of the law which requires that mines shall be guarded, lighted and ventilated. This act has to do with the comfort, health and care of the employes of mines, and is within the legislative discretion. *State* v. *Barrett, supra.*

The true test of a criminal law as to its effect, is that it shall state the crime with such certainty, that the person upon whom it operates, may with reasonable certainty, ascertain what the statute requires to be done. In the case of *Tozer* v. *United States* (1892), 52 Fed. 917, Chief Justice Brewer uses the following language: "But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not." The act in question has this provision as to the washhouse: "To provide a suitable washroom or washhouse for the use of persons employed, so that they may change their clothing before beginning work, and wash themselves and change their clothing after working. That said building or room shall be a separate building or room from the engine or boiler room, and shall be maintained in good order, be properly lighted and heated, and shall be supplied with clean, cold and warm water, and

shall be provided with all necessary facilities for persons to wash, and also provided with suitable lockers for the safe keeping of clothing.'' All these provisions of the statute are so definite and certain in their terms that no one who makes an honest effort to comply therewith need err.

Each of the questions presented by appellant in his assignment of errors, except the single one as to whether this act contravenes §19, article 4, of the Constitution has already been decided by this court in *State* v. *Barrett, supra,* and *State* v. *Louisville, etc., R. Co., supra; Barrett* v. *State, supra; Hirth-Krause Co.* v. *Cohen* (1912), 177 Ind. 1, 97 N. E. 1. These opinions are able and exhaustive discussions of the constitutional questions presented by appellant in this cause and were decided adversely to the contention of appellant. To extend this opinion would be to reiterate what has already been decided in the cases last above cited.

We are of the opinion that the title of the act is comprehensive enough to include superintendents, and that the act does not contravene any of the provisions of the Constitution of the United States, or of this State, as claimed by appellant.

Judgment affirmed.

NOTE.—Reported in 100 N. E. 563. See, also, under (1) 36 Cyc. 1028; (2) 36 Cyc. 1114; (3) 36 Cyc. 1183; (4) 8 Cyc. 866, 1062; (5) 8 Cyc. 865, 1062; (6) 27 Cyc. 747; 36 Cyc. 969; (8) 8 Cyc. 1120; (9) 8 Cyc. 851; 36 Cyc. 1137; (10) 8 Cyc. 840; (11) 8 Cyc. 791; (12) 12 Cyc. 141. As to the title of a statute in respect of its embracing but one subject, and what may be included thereunder, see 79 Am. St. 456. As to the words of a statute and the sense in which they are to be construed, see 12 Am. St. 827. As to laws conferring special privileges upon a class, see 21 Am. St. 788. As to the 14th amendment in its relation to special privileges, burdens and restrictions, see 25 Am. St. 870. As to the police power, being the power resident in every sovereignty, to pass all laws for the internal regulation and government of the state necessary for the public welfare, see 53 Am. St. 572.